Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Josephine K. Petrick (CA SBN 280233)
jpetrick@nortonlaw.com
Celine G. Purcell (CA SBN 305158)
cpurcell@nortonlaw.com
Rebecca Kutlow (CA SBN 333944)
rkutlow@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Defendant
*UPSIDE SERVICES, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGAN ALLEC, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UPSIDE SERVICES, INC.,<br><br>Defendant. | Case No. 3:23-cv-05982-SK<br><br>**DEFENDANT UPSIDE SERVICES, INC.'S REQUEST FOR INCORPORATION BY REFERENCE**<br><br>**Filed concurrently with Motion to Dismiss Plaintiff's First Amended Class Action Complaint**<br><br>Date: July 29, 2024<br>Time: 9:30 a.m.<br>Courtroom: C<br>Judge: Hon. Sallie Kim<br><br>*Action filed November 17, 2023* |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 29, 2024, at 9:30 a.m. or as soon thereafter as counsel may be heard, in Courtroom C of this Court, located at 450 Golden Gate Ave., 15th Fl., San Francisco, CA 94102, Defendant Upside Services, Inc. hereby does respectfully request, in connection with its concurrently filed Motion to Dismiss Plaintiff's First Amended Class Action Complaint, that this Court incorporate by reference Exhibits 1–8 attached to the Declaration of Christopher S. Rhee filed concurrently herewith. This Request is based on this notice as well as the Memorandum of Points and Authorities filed concurrently herewith, as well as any reply briefing, and arguments made at the July 29, 2024, at 9:30 a.m. hearing.

Dated: June 20, 2024

Respectfully submitted,

THE NORTON LAW FIRM PC

*/s Josephine K. Petrick*
Fred Norton
Josephine K. Petrick
Celine G. Purcell
Rebecca D. Kutlow

Attorneys for Defendant
Upside Services, Inc.

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................... 1
II. Discussion .............................................................................................................................. 1
    A. The Terms of Service Underlie Allec's entire FAC and multiple causes of action........... 3
    B. It is well established that a plaintiff cannot cherry-pick certain terms of service while selectively omitting provisions that doom their claims. ................................................. 10
III. Conclusion............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Huber v. Biden*,
   No. 21-CV-06580-EMC, 2022 WL 827248 (N.D. Cal. Mar. 18, 2022) .......................................... 3, 11

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ........................................................................................................ 2

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ............................................................................................. 2, 10, 11

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ....................................................................................... 2, 3, 11, 12

*Mercola.com, LLC v. Google LLC*,
   No. 3:22-CV-05567-LB, 2023 WL 5680112 (N.D. Cal. Sept. 4, 2023) ........................................ 3, 11

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ..................................................................................................... 10, 11

*Rangel v. Dorsey*,
   No. 21-CV-08062-CRB, 2022 WL 2820107 (N.D. Cal. July 19, 2022) ......................................... 3, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................................... 1

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................................................... 2

*Yuksel v. Twitter, Inc.*,
   No. 22-CV-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ........................................ 3, 11

Statutes

Cal. Civ. Code. §1770(a)(14)'s ........................................................................................................ 8
Cal. Civ. Code. § 1770(a)(16)'s ....................................................................................................... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

Defendant Upside Services, Inc. respectfully requests the Court consider the following documents attached to the Declaration of Christopher S. Rhee filed concurrently herewith as incorporated by reference in the First Amended Complaint ("FAC"):

(1) **Exhibit 1**: Upside's Terms of Service dated May 25, 2017

(2) **Exhibit 2**: Upside's Terms of Service dated December 28, 2019

(3) **Exhibit 3**: Upside's Terms of Service dated July 16, 2020

(4) **Exhibit 4**: Upside's Terms of Service dated August 13, 2020

(5) **Exhibit 5**: Upside's Terms of Service dated September 10, 2021

(6) **Exhibit 6**: Upside's Terms of Service dated November 12, 2021

(7) **Exhibit 7**: Upside's Terms of Service dated April 26, 2022

(8) **Exhibit 8**: Upside's Terms of Service dated December 31, 2022

*See* Declaration of Christopher S. Rhee ("Rhee Decl.") ¶¶ 4–11.

The Terms of Service are all incorporated by reference in the FAC, where Plaintiff Logan Allec cites them repeatedly. *See* Dkt. No. 44 at ¶¶ 4, 25, 32, 35-36, 54-58, 60-62, 66, 71, 75, 81, 98-100, 102-06, 114, 140, 172, 187, 199.

Upside previously filed a Request for Incorporation by Reference in connection with its Motion to Dismiss Allec's original complaint. *See* Dkt. No. 17. On April 29, 2024, the Court concluded that the original complaint incorporated by reference Upside's Terms of Service. *See* Dkt. No. 36. Like the original complaint, the FAC refers extensively to multiple versions of Upside's TOS and, further, the TOS underly Allec's claims. Because, like the original complaint, the FAC references and incorporates the TOS, the Court should again consider Exhibits 1–8 and their contents when considering Upside's motion to dismiss the FAC.

## II. Discussion

In ruling on a motion to dismiss, courts may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The well-established incorporation-by-reference doctrine "permits [courts] to take into account documents

'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (second alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* Incorporation by reference is "a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.*

A defendant may seek incorporation of a document into the complaint either "if the plaintiff refers extensively to the document or [if] the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. The doctrine "applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076. And the court "may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)," unless that assumption "only serve[s] to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (cleaned up).

While generally the incorporation by reference doctrine is invoked when a complaint references a document extensively, the Ninth Circuit has also affirmed incorporation by reference of materials a complaint did not reference but the claims necessarily relied upon. For example, in *Knievel*, 393 F.3d 1068, Evel Knievel alleged ESPN defamed him and his wife on its website by posting a picture of them and another woman with a suggestive caption. *Id*. at 1070. In the complaint, Knievel referenced only the allegedly defamatory photo and caption. *Id*. at 1076. ESPN submitted the surrounding photos and captions to show a reasonable person would not view the caption as defamatory. *Id*. A defamation claim requires showing that the statement at issue, given its context, is "capable of sustaining a defamatory meaning." *Id*. at 1073 (internal quotation marks omitted). Therefore, even though the complaint did not

"allege or describe the contents of the surrounding pages," it was proper to consider them incorporated by reference because the claim necessarily depended on them. *Id*. at 1076.

"[C]ourts in [the Ninth Circuit] routinely take judicial notice of terms of services." *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) (collecting cases). In granting motions to dismiss for failure to state a claim, Courts also routinely rely on terms of service that are incorporated by reference or otherwise relied upon in the complaint. *See, e.g.*, *Huber v. Biden*, No. 21-CV-06580-EMC, 2022 WL 827248, at *1 n.1, *11 (N.D. Cal. Mar. 18, 2022) (granting request for judicial notice of Twitter's COVID-19 Policy and Terms of Service, and granting motion to dismiss in its entirety with prejudice on the basis of those documents), *aff'd*, No. 22-15443, 2022 WL 17818543 (9th Cir. Dec. 20, 2022), *cert. denied*, 144 S. Ct. 221 (2023); *Rangel v. Dorsey*, No. 21-CV-08062-CRB, 2022 WL 2820107, at *1, *4 (N.D. Cal. July 19, 2022) (dismissing complaint with prejudice based on Twitter's terms of service, which plaintiff "quote[d] t extensively in complaint"); *Mercola.com, LLC v. Google LLC*, No. 3:22-CV-05567-LB, 2023 WL 5680112, at *1 n.4, *7 (N.D. Cal. Sept. 4, 2023) (same, where complaint "cites and quotes the Terms").

### A.   The Terms of Service Underlie Allec's entire FAC and multiple causes of action.

Allec's FAC refers extensively to Upside's Terms of Service and his claims necessarily rely upon them. *See* Dkt. No. 44 at ¶¶ 4, 25, 32, 35-36, 54- 58, 60- 62, 66, 71, 75, 81, 98- 100, 102- 106, 114, 140, 172, 187, 199

First, Allec invokes the Terms of Service as the basis for venue in this Court. Dkt. No. 44 ¶ 25.

Second, Allec argues Upside promised to give him "payments 'for life' for referrals" and then modified the Terms of Service in a "cloak-and dagger fashion" to terminate referral payments. Dkt. No. 44 ¶¶ 52–55. Plaintiff alleges "[h]istorically, Upside's Terms contained only a passing reference to its referral program; it never suggested that the Terms governed the referral program. The referral program was not even included in Upside's definition of its Services." Dkt. No. 44 ¶ 55. Thus, Upside's Terms of Service—and whether they referenced the referral program—go to the crux of Allec's claims.

Indeed, every iteration of Upside's Terms of Service reserved Upside's right to amend the Terms at Upside's discretion. Rhee Decl. Ex. 1 (2017 TOS) at 1; *accord* Ex. 2 at 1; Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1; Ex. 8 at 1. Every iteration of the Terms of Service also limited Upside's

liability from its decision to modify or discontinue any product it offers, and from its decision to terminate a user's account. Rhee Decl. Ex. 1 (2017 TOS) at 1, 10; *accord* Ex. 2 at 2, 21; Ex. 3 at 2–3, 21; Ex. 4 at 2–3, 21; Ex. 5 at 2–3, 21; Ex. 6 at 2–3, 22; Ex. 7 at 3, 22; Ex. 8 at 3, 22. And the Terms of Service have consistently provided that when a user violates them, Upside has the right to terminate the user's account and to cancel any current, pending, or future Upside rewards. Rhee Decl. Ex. 1 (2017 TOS) at 3, 10; *accord* Ex. 2 at 6, 20–21; Ex. 3 at 6, 21; Ex. 4 at 6, 21; Ex. 5 at 7, 21; Ex. 6 at 7, 21-22; Ex. 7 at 7, 21; Ex. 8 at 7, 21–22.

Not only does the Complaint include a hyperlink to the full August 2020 TOS (FAC ¶ 55 n.7)—thereby expressly incorporating them—the Complaint is replete with allegations regarding multiple versions of the TOS, including all of those leading up to the November 2021 TOS:

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| Personal jurisdiction and venue allegations rely on the TOS. | Unspecified (*see* Rhee Decl. Exs. 1-8) | 25 |
| Alleging that Upside changed its referral bonus program "in true cloak-and-dagger fashion: by modifying its Terms." | Unspecified (*see* Rhee Decl. Exs. 1-8) | 54 |
| "Historically, Upside's Terms contained only a passing reference to its referral program; it never suggested that the Terms governed the referral program. The referral program was not even included in Upside's definition of its Services: [quoting definition of Services from August 2020 TOS]." | August 2020 TOS (Rhee Decl. Ex. 4) | 55 & n.7 |
| "On November 12, 2021, Upside—for the very first time—attempted to incorporate its referral program into its Terms, and introduced a new 'affiliate program' [quoting November 2021 TOS]." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 57 |
| "At no point prior to November 12, 2021 had Upside reserved the right to make changes to its referral program, or the 'amount and frequency of referral bonuses'— because Upside's Terms had never mentioned the referral program." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 58 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| Alleging the effective date of the November 2021 TOS is November 26, 2021. | November 2021 TOS (Rhee Decl. Ex. 6) | 60 |
| On November 18, 2021 (six days after the new Terms were published), Upside's head of operations, Kristen Bierman, reached out to users, including Allec, with a targeted email . . . . | November 2021 TOS (Rhee Decl. Ex. 6) | 61 |
| "This was the first time Upside indicated to consumers that it was not only planning to revamp the referral program going forward, but planned to use this change to its Terms of Service to justify retroactively modifying the compensation for referrals users had already made." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 62 |
| "For the first time ever, and contrary to its numerous prior representations, Upside now argued that it was never its intent that users share their referral codes with the public at large." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 63 |
| "Upon information and belief, this is true not only for users who have accessed its services since the new Terms of Service were promulgated on November 12, 2021, but for all referrals made by all users, regardless of whether Upside contends that they ever agreed to the new Terms." | November 2021 TOS (Rhee Decl. Ex. 6) | 71 |
| "Upon information and belief, most referring consumers were never informed by Upside about these purported changes to the referral program as indicated in its Terms (including because they never saw or assented to the Terms)." | November 2021 TOS (Rhee Decl. Ex. 6) | 75 |
| "[U]sers do not encounter any qualifications or disclaimers (or even Upside's Terms) when signing up for its services using the App: [screenshot omitted]." | Unspecified (*see* Rhee Decl. Exs. 1-8) | 81 |
| Alleging that Allec attempted to opt out of the arbitration clause within 30 days after the November 2021 TOS were promulgated. | November 2021 TOS (Rhee Decl. Ex. 6) | 97-99 |
| Alleging that an update to the Terms "prior" to the November 2021 TOS "stealthily introduced the opt-out provision." | September 2021 TOS (Rhee Decl. Ex. 5) | 100 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| "At the time Allec registered with Upside, there was no opt-out provision." | May 2017 TOS (Rhee Decl. Ex. 1); *see also* December 2019 TOS (Rhee Decl. Ex. 2); July 2020 TOS (Rhee Decl. Ex. 3); August 2020 TOS (Rhee Decl. Ex. 4) | 101 |
| "And, of course, there had been no reference to the referral program in the Terms prior to November 12, 2021." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 102 |
| "Notably, Upside contended that it had afforded existing users the opportunity to opt out of arbitration with a prior iteration of its Terms, promulgated in October [*sic*, September] 2021." | September 2021 TOS (Rhee Decl. Ex. 5) | 103 |
| "Upon information and belief, Upside introduced this opt-out provision, then intentionally waited for thirty days for the opt-out period to expire before introducing a complete overhaul of its referral program, specifically in an attempt to thwart existing customer efforts to opt out of arbitration for a referral program that had never previously been a part of its Terms of Service." | September 2021 TOS (Rhee Decl. Ex. 5); November 2021 TOS (Rhee Decl. Ex. 6) | 104 |
| "In effect, this rendered the opt-out 'option' inapplicable, as it was never offered to Allec for any version of the Terms which referenced the referral program contract, which had previously been a contract independent of the Terms." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 105 |
| "In May of 2022, in a further effort to escape liability to Allec, Upside informed Allec it was terminating his account for a breach of its Terms of Service." | November 2021 TOS (Rhee Decl. Ex. 6) | 106 |
| "The 'breach' in question was the fact that Allec's referral code, . . . had continued to appear on Allec's previously published YouTube videos." | November 2021 TOS (Rhee Decl. Ex. 6) | 107 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| "Upside's decision to stop paying users for referrals previously made was planned, as demonstrated by its update to the Terms to include a one-time opt-out mechanism for arbitration for existing users that expired days before it completely overhauled its existing referral program." | September 2021 TOS (Rhee Decl. Ex. 5); November 2021 TOS (Rhee Decl. Ex. 6) | 114 |
| **Basis for Allec's First Cause of Action for Unfair Competition**<br><br>"At no point prior to November, 2021 did Upside ever indicate anywhere in the advertisements that it caused to be disseminated that referral rewards were subject to its Terms, or that it had the right to change such programs." | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 140 |
| **Basis for Allec's First Cause of Action for Unfair Competition**<br><br>Describing November 2021 TOS amendment as a "major shift" from how the referral program was allegedly always intended to work. | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 144 |
| **Basis for Allec's First Cause of Action for Unfair Competition**<br><br>"Upside has also violated the 'unfair' prong of the UCL by luring consumers into enticing friends, family, and strangers into signing up for its services with the promise of a lifetime benefit, all while (according to Upside) 'reserving the right' to change the terms of that offer." | All versions of TOS (Rhee Decl. Exs. 1-8 (reserving the right to modify the TOS or discontinue product offerings)) | 146 |
| **Basis for Allec's Second Cause of Action for False Advertising**<br><br>"The lifetime referral program that Upside advertised to consumers made no reference to any subsequent modifications or to Upside's ability to alter the same, nor did it suggest that Upside could, at any point, stop payments for previously made referrals." | All versions of TOS (Rhee Decl. Exs. 1-8 (reserving the right to modify the TOS or discontinue product offerings)) | 156 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| **Basis for Allec's Third Cause of Action under the CLRA**<br><br>"Defendant has violated Cal. Civ. Code. §1770(a)(14)'s proscription against representing that a transaction conferred rights or obligations that it did not have. The advertising of the referral program indicated Upside would pay consumers every time a referred user purchased gas using Upside in the future, 'forever,' and yet Upside made these statements *while purportedly reserving its right to modify the terms of that advertisement at any time*—including as to referrals already made—effectively rendering the 'forever' language of its advertisements false." (Emphasis added.) | All versions of TOS (Rhee Decl. Exs. 1-8 (reserving the right to modify the TOS or discontinue product offerings)) | 164 |
| **Basis for Allec's Third Cause of Action under the CLRA**<br><br>"Defendant has violated Cal. Civ. Code. § 1770(a)(16)'s proscription against representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not by purporting that its *changes to the referral program* are a 'clarification.'" (Emphasis added.) | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 165 |
| **Basis for Allec's Third Cause of Action under the CLRA**<br><br>Alleging Upside violated the CLRA by purportedly "omitting [its] position that [the referral bonus program] was subject to Upside continuing to offer the referral program." | All TOS versions (Rhee Decl. Exs. 1-8 (reserving the right to modify or discontinue product offerings) | 166 |
| **Basis for Allec's Fourth Cause of Action for Fraud**<br><br>"These representations were false when made, because Upside always intended to stop providing the promised lifetime benefit, as demonstrated by its email stating that it was 'clarifying' how the referral program was intended to work, *and by its decision to amend its Terms in back-to-back amendments to frustrate consumers' ability to pursue their claims against it for these changes, and by Upside's new assertion that it 'reserves the right' to make changes to the referral program—an assertion that never existed before November, 2021.* | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 172 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| These actions demonstrate that Upside acted with intent, and that it had planned to defraud consumers by luring them in with promises it never intended to keep." (Emphasis added.) | | |
| **Basis for Allec's Fifth Cause of Action for Unjust Enrichment**<br><br>Incorporating previous allegations by reference supporting its allegation that "Defendant misrepresented the existence of a lifetime benefit in its referral program" while reserving the right to modify its product offerings in its Terms of Service. | All TOS versions (Rhee Decl. Exs. 1-8) (reserving the right to modify or discontinue product offerings) | 179-80 |
| **Basis for Allec's Seventh Cause of Action for Bad Faith Breach of Contract**<br><br>"Instead, Upside attempted to modify these existing agreements by changing the Terms of Service on its website, then informing users that these changes retroactively applied to the referrals they had already made."<br><br>And alleging this was a change in Upside's prior practice. | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs. 1-5) | 199-200 |
| **Basis for Allec's Seventh Cause of Action for Bad Faith Breach of Contract**<br><br>"Upside also suggested it had the right to reserve [*sic*, discontinue] this program, when it had never reserved such a right for itself at the time that users made their referrals in the first place." | All TOS versions (Rhee Decl. Exs. 1-8) | 202 |
| **Basis for Allec's Seventh Cause of Action for Bad Faith Breach of Contract**<br><br>"Upside also informed users that if they wished to continue receiving payments for previously made referrals, they would need to enter into an affiliate agreement and join its new affiliate program." | November 2021 TOS (Rhee Decl. Ex. 6) | 203 |

| Allegation | TOS Version | First Amended Complaint ¶ |
|---|---|---|
| **Basis for Allec's Eighth Cause of Action for Conversion**<br><br>Incorporating by reference all previous allegations in support of his allegation that Upside's purported change in policy also constituted conversion. | November 2021 TOS (Rhee Decl. Ex. 6)<br><br>All versions prior to November 2021 TOS (*see* Rhee Decl. Exs 1-5) | 206–08 |

Thus, not only does Allec repeatedly reference particular versions of the Terms, including the May 2017, August 2020, September 2021, and November 2021 TOS, but he also repeatedly incorporates *all of the versions of the TOS preceding the November 2021 TOS*—for example, when he alleges that "there had been no reference to the referral program in the Terms prior to November 12, 2021." FAC ¶ 102; *accord, e.g.*, FAC ¶¶ 57–58; Dkt. No. 25 at 8 ("Prior to November 2021, there was no reference in the Terms to how the referral program worked.").

      **B.**    **It is well established that a plaintiff cannot cherry-pick certain terms of service while selectively omitting provisions that doom their claims.**

Allec's claims necessarily rely on his one-sided characterization of Upside's Terms of Service. This is the exact scenario for which the incorporation by reference doctrine was designed—to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002; *accord Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[The] policy concern underlying the rule [of incorporation by reference is] [p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."). This Court previously ruled that Allec's original complaint did not "mere[ly] mention" Upside's Terms of Service but instead referred to the various versions of the Terms of Service many times. *See* Dkt. No. 36 at 5-6. The Court therefore concluded that "incorporation of Defendant's Terms of Service is proper." *Id.* Allec's FAC, like the original complaint, includes at least 30 explicit references to the Terms of Service. *See* Dkt. No. 44 at ¶¶ 4, 25, 32, 35-36, 54-58, 60- 62, 66, 71, 75, 81, 98- 100, 102- 106, 114, 140, 172, 187, 199. As such, Upside's Terms of Service should once again be deemed incorporated by reference and considered in conjunction with Upside's motion to dismiss.

1  Allec's references to the TOS underlie the Complaint's theory that the TOS amendments were an instrument of a purported sinister scheme in support of Allec's fraud claim, and they also underlie Allec's claims for unfair business practices, false advertising, consumer deception, unjust enrichment, bad faith breach of contract, and conversion. *Supra* § II.A (table); FAC. 4, 25, 32, 35-36, 54- 58, 60- 62, 66, 71, 75, 81, 98- 100, 102- 106, 114, 140, 172, 187, 199. In Allec's fourth cause of action for fraud, the FAC explicitly alleges:

> Defendant represented to Plaintiff and Consumers that it would provide them a lifetime benefit for every user they referred to Upside, forever, without qualification.
>
> These representations were false when made … **as demonstrated by … its decision to amend its Terms in back-to-back amendments** to frustrate consumers' ability to pursue their claims against it for any of these changes, **and by Upside's new assertion that it 'reserves the right' to make changes to the referral program – an assertion that never existed before [the] November, 2021[Terms of Service]**.

FAC ¶¶ 170 & 172 (emphases added). But Upside's earlier iterations of the TOS all unequivocally included the right to amend its TOS "at [its] sole discretion[.]" Rhee Decl. Ex. 1 (2017 TOS) at 1; *accord* Ex. 2 at 1; Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1; Ex. 8 at 1. Allec may not use the TOS as a sword while denying Upside the opportunity to use them as a shield. Dkt. No. 17 (RIR) at 4–5; *see Khoja*, 899 F.3d at 1002 (explaining, in the context of a motion to dismiss for failure to state a claim, the incorporation by reference doctrine was designed to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *accord Parrino*, 146 F.3d at 706 ("[The] policy concern underlying the rule [of incorporation by reference is] [p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based.").

This doctrine applies with full force to terms of service. As discussed, courts in the Ninth Circuit routinely take judicial notice of terms of service—and deem such terms of service incorporated by reference in complaints. *See Yuksel*, 2022 WL 16748612, at *3 (collecting cases). And, as noted, courts routinely do so in connection with orders granting motions to dismiss for failure to state a claim. *See, e.g., Huber*, 2022 WL 827248, at *1 n.1, *11; *Rangel*, 2022 WL 2820107, at *1, *4; *Mercola.com*, 2023 WL 5680112, at *1 n.4, *7.

Allec previously argued *Knievel* is distinguishable because in that case, Allec argues, the court

was required to evaluate the entire communication in question in order to determine its allegedly defamatory content. Dkt. 24 at 3-4. But incorporation by reference is not only applicable where the proffered evidence speaks to a claim's legal factor or element. Here, as in scores of other cases, Allec's claims rely upon and thus "incorporate" the terms of service themselves by including statements like: "These representations were false when made … *as demonstrated by … [the] … amend[ed]… Terms … and by Upside's new assertion that it 'reserves the right' to make changes to the referral program – an assertion that never existed before [the] November, 2021[Terms of Service].*" FAC ¶ 172 (emphasis added). *See, e.g.*, FAC ¶ 140 "At no point prior to November, 2021 did Upside ever indicate anywhere in the advertisements that it caused to be disseminated that referral rewards were subject to its Terms, or that it had the right to change such programs."; FAC ¶ 57 "On November 12, 2021, Upside—for the very first time—attempted to incorporate its referral program into its Terms, and introduced a new 'affiliate program' [quoting November 2021 TOS]."

Further, *Knievel* stands for the proposition that documents a plaintiff's claims necessarily rely upon can and should be incorporated by reference. 393 F.3d at 1076. This Court should do the same here and grant the Request for Incorporation by Reference.

**III.     Conclusion**

Upside respectfully requests the Court grant Upside's request for incorporation by reference—as this Court correctly granted Upside's prior request for incorporation by reference in connection with its motion to dismiss the original complaint (Dkt. No. 36)—and again rule that Exhibits 1–8 to the Rhee Declaration are incorporated by reference and therefore may be considered in connection with Upside's motion to dismiss.

|   |   |
|---|---|
| Dated: June 20, 2024 | Respectfully submitted,<br><br>THE NORTON LAW FIRM PC<br><br>*/s Josephine K. Petrick*<br>Fred Norton<br>Josephine K. Petrick<br>Celine G. Purcell<br>Rebecca D. Kutlow<br>Attorneys for Defendant<br>Upside Services, Inc. |