1   Fred Norton (CA SBN 224725)
    fnorton@nortonlaw.com
2   Josephine K. Petrick (CA SBN 280233)
    jpetrick@nortonlaw.com
3   Celine G. Purcell (CA SBN 305158)
    cpurcell@nortonlaw.com
4   Rebecca D. Kutlow (CA SBN 333944)
    rkutlow@nortonlaw.com
5   THE NORTON LAW FIRM PC
    299 Third Street, Suite 200
6   Oakland, CA 94607
    Telephone: (510) 906-4900
7
8   Attorneys for Defendant
    *UPSIDE SERVICES, INC.*

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11  LOGAN ALLEC, on behalf of himself and       Case No. 3:23-cv-05982-SK
12  all others similarly situated,
                                                 **DEFENDANT UPSIDE SERVICES, INC.'S**
13       Plaintiff,                              **REPLY IN SUPPORT OF ITS MOTION TO**
                                                 **DISMISS FIRST AMENDED COMPLAINT**
14       v.
                                                 Date:   August 19, 2024
15  UPSIDE SERVICES, INC.,                       Time:   9:30 a.m.
                                                 Courtroom: C – 15th Floor
16                                               Judge:  Hon. Sallie Kim
         Defendant.
17                                               *Action filed November 17, 2023*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ..................................................................................................... 1

    A.     Allec agreed to the TOS, and they are enforceable. ................................................. 1

        1.     Allec agreed to the TOS in 2018 and to each subsequent amendment. .............. 1

            a.   Allec alleges he had actual knowledge of Upside's TOS and used Upside's app .................................................................................. 2

            b.   Upside's registration page conspicuously displays a link to the TOS and requires users to click a button manifesting their agreement. ................. 3

            c.   Allec also assented to the updated TOS, which he acknowledges he received by email and reviewed before continuing to use Upside. ........... 5

        2.     The TOS are enforceable. ....................................................................... 6

            a.   Allec's misrepresentation and frustration arguments are frivolous. ............. 7

            b.   The Terms are not illusory or in bad faith merely because they contain a common unilateral modification clause. ...................................... 8

            c.   Allec's cut-and-paste unconscionability arguments should be rejected. ...... 9

    B.     Allec's unilateral contract theory fails because it necessarily incorporates the TOS. ...................................................................................... 12

    C.     The one-year limitations clause bars Allec's complaint. .............................................. 13

        1.     The one-year limitations clause encompasses Allec's advertising claims ........ 14

        2.     The continuous accrual doctrine is inapplicable. ............................................. 14

    D.     Allec's claims independently fail because they are inadequately pleaded. .................. 15

III.   CONCLUSION ................................................................................................ 15

i

DEFENDANT UPSIDE SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05982-SK

1

**TABLE OF AUTHORITIES**

2
Page(s)

**Cases**

3

*Abrego Abrego v. Dow Chem. Co.*,
    443 F.3d 676 (9th Cir. 2006) .................................................................................4

4

*Aggarwal v. Coinbase, Inc.*,

5
    2023 WL 4935003 (N.D. Cal. Aug. 2, 2023) ..........................................................8

6

*Aryeh v. Canon Bus. Sols., Inc.*,
    292 P.3d 871 (Cal. 2013) .......................................................................................14

7

*Baltazar v. Forever 21, Inc.*,

8
    62 Cal. 4th 1237 (2016) ...............................................................................9, 10, 12

9

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ........................................................................ *passim*

10

*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) .................................................................................9

11

12

*Bragg v. Linden Research Inc.*,
    487 F. Supp. 2d 593 (E.D. Pa. 2007) ...................................................................12

13

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*,
    216 Cal. App. 4th 1249 (2013) ..............................................................................11

14

*Brooks v. IT Works Mktg., Inc.*,

15
    2022 WL 2079747 (E.D. Cal. June 9, 2022) ...........................................................7

16

*Chess v. CF Arcis IX LLC*,
    2020 WL 4207322 (N.D. Cal. July 22, 2020) ......................................................8, 9

17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ...............................................................................14

18

19

*Chou v. Charles Schwab & Co.*,
    2023 WL 2674367 (9th Cir. Mar. 29, 2023) ..........................................................12

20

*Darnaa, LLC v. Google, LLC*,
    756 F. App'x 674 (9th Cir. 2018) ..........................................................................10

21

*Dorn v. Goetz*,

22
    85 Cal. App. 2d 407 (1948) .....................................................................................8

23

*Enhanced Athlete Inc. v. Google LLC*,
    2020 WL 4732209 (N.D. Cal. Aug. 14, 2020) .........................................................7

24

*F.T.C. v. Stefanchik*,
    559 F.3d 924 (9th Cir. 2009) ...................................................................................7

25

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,

26
    98 F.4th 1180 (9th Cir. 2024) ..................................................................................3

27

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ................................................................15

28

*Glenn R. Sewell Sheet Metal, Inc. v. Loverde*,
  70 Cal. 2d 666 (1969) ................................................................................................8

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ...................................................................................4

*Han v. Mobil Oil Corp.*,
  73 F.3d 872 (9th Cir. 1995) ......................................................................................11

*Hodges v. Hertz Corp.*,
  351 F. Supp. 3d 1227 (N.D. Cal. 2018) .....................................................................3

*Huber v. Biden*,
  2022 WL 827248 (N.D. Cal. Mar. 18, 2022)..............................................................7

*In re Mark Anthony Const., Inc.*,
  886 F.2d 1101 (9th Cir. 1989) ..................................................................................14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D. Cal. 2018) ...............................................................10, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .....................................................................................4

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...................................................................................4

*Lawrence v. W. Mut. Ins. Co.*,
  204 Cal. App. 3d 565 (1988) ....................................................................................11

*Lewis v. YouTube, LLC*,
  244 Cal. App. 4th 118 (2015) ...................................................................................10

*Loewen v. Lyft, Inc.*,
  129 F. Supp. 3d 945 (N.D. Cal. 2015) ..............................................................1, 13, 14

*Matera v. Google Inc.*,
  2016 WL 5339806 (N.D. Cal. Sept. 13, 2016) ...........................................................6

*Mercola.com, LLC v. Google LLC*,
  2023 WL 5680112 (N.D. Cal. Sept. 4, 2023) .............................................................7

*Miller v. Amazon.com, Inc.*,
  No. 21-36048, 2023 WL 5665771 (9th Cir. Sept. 1, 2023)......................................2, 6

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020) .....................................................................7

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ............................................................................... passim

*New England Country Foods, LLC v. Vanlaw Food Prod., Inc.*,
  87 F.4th 1016 (9th Cir. 2023) ..................................................................................10

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) .....................................................................................4

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) ........................................................................... passim

*Peleg v. Neiman Marcus Group, Inc.*,
   204 Cal. App. 4th 1425 (2012) ...................................................................8, 9

*Peoplesoft U.S.A., Inc. v. Softeck, Inc.*,
   227 F. Supp. 2d 1116 (N.D. Cal. 2002) .............................................................8

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ...........................................................................11

*Prager Univ. v. Google LLC*,
   85 Cal. App. 5th 1022 (2022) ...........................................................................13

*Putian Authentic Enter. Mgmt. Co., Ltd. v. Meta Platforms, Inc.*,
   2022 WL 1171034 (N.D. Cal. Apr. 19, 2022) ....................................................7

*Rumsey Elec. Co. v. Univ. of Del.*,
   358 A.2d 712 (Del. 1976) ................................................................................11

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ...........................................................................13

*Silicon Valley Self Direct, LLC v. Paychex, Inc.*,
   2015 WL 4452373 (N.D. Cal. July 20, 2015) ...................................................10

*Soltani v. W. & S. Life Ins.*,
   258 F.3d 1038 (9th Cir. 2001) .........................................................................11

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ...............................................................7

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
   149 Cal. App. 4th 402 (2007) ...........................................................................15

*Suski v. Marden-Kane, Inc.*,
   2022 WL 103541 (N.D. Cal. Jan. 11, 2022) .....................................................14

*SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*,
   87 Cal. App. 5th 882 (2023) ..............................................................................8

*Teradata Corp. v. SAP SE*,
   570 F. Supp. 3d 810 (N.D. Cal. 2021) ...............................................................3

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) .....................................................................11, 13

*Tompkins v. 23andMe, Inc.*,
   2013 WL 6497912, (N.D. Cal. Dec. 9, 2013) ...................................................11

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018) ...............................................................9

*Webber v. Uber Techs., Inc.*,
   2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ...................................................6

*West v. Uber Techs.*,
   2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) .....................................................6

**Statutes**

Cal. Civ. Code § 1751.................................................................................................11

## I.    INTRODUCTION

For years, Plaintiff Logan Allec was in the business of using Upside's referral program to generate significant revenue through his professional website and YouTube channel. When Allec refused to stop violating Upside's Terms of Service (TOS), Upside terminated his account and with it, his ability to participate in the referral program. It is undisputed that creating an Upside account is a condition precedent to participation in that program—and Upside accounts are governed by the TOS.

Allec claims he did not assent to the TOS, but this argument fails three times over. First, the FAC shows Allec had actual knowledge of the TOS. Second, facts deemed incorporated by reference in the FAC establish that every user who registers with Upside (including Allec) agreed to the TOS before participating in the referral program. Third, the FAC acknowledges Allec received and reviewed periodic updates to the TOS by email, and then continued using Upside.

The TOS govern Allec's claims because (1) he "registered with Upside," FAC ¶ 101, and (2) this Court and others have held that TOS apply to rewards-program advertisements. *See, e.g.*, *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015). Allec does not address these authorities in his opposition. Moreover, the TOS explicitly state that they "constitute the entire agreement" between the parties and encompass all "related" services. As a matter of law, the TOS Allec accepted when he registered with Upside—and each subsequent version of the TOS—govern the entirety of the parties' relationship, including the referral program. Thus, Allec's claims are barred by the TOS's one-year limitations period, among other TOS provisions. And Allec's claims independently fail because each suffers from incurable pleading deficiencies. The Court should dismiss the FAC, this time with prejudice.

## II.    ARGUMENT

### A.    Allec agreed to the TOS, and they are enforceable.

#### 1.    Allec agreed to the TOS in 2018 and to each subsequent amendment.

Allec attempts to avoid the TOS by arguing, for the first time, that he never consented to them. Not so. "[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024) (citing *Berman v. Freedom Fin. Network,*

1   *LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022)) (cleaned up). "[C]ourts confronted with online agreements

2   have devised rules to determine whether meaningful assent has been given." *Id.* (cleaned up). A user

3   assents to the TOS if they have actual knowledge or inquiry notice. *Id.* A user has inquiry notice if "(1)

4   the website provides reasonably conspicuous notice of the terms to which the consumer will be bound;

5   and (2) the consumer takes some action, such as clicking a button or checking a box, that

6   unambiguously manifests his or her assent to those terms." *Id.* (cleaned up). Further, it is well

7   established that a user accepts updated TOS by using an app after receiving an email notifying them of

8   the updates. *See, e.g.*, *Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *2 n.1 (9th Cir.

9   Sept. 1, 2023), *cert. denied*, 144 S. Ct. 1402 (2024).

10   

a.      **Allec alleges he had actual knowledge of Upside's TOS and used Upside's app, so he assented to those Terms.**

11

12   A company's TOS creates an enforceable contract where the user "has actual knowledge of the

13   agreement" and proceeds to use the company's website or app. *Patrick*, 93 F.4th at 476 (citing *Berman*,

14   30 F.4th at 856) (cleaned up). By cherry-picking from Upside's registration process (*infra* § II.A.1.b),

15   Allec alleges users generally do not encounter Upside's TOS when signing up for its services, FAC

16   ¶ 81; but he does not allege *he* was unaware of the TOS. [1] In fact, Allec professes a detailed familiarity

17   with the 2018 TOS, *see* FAC ¶ 101–02 ("[When] Allec registered with Upside, there was no opt-out

18   provision. . . . And . . . there had been no reference to the referral program in the Terms prior to

19   November 12, 2021."), and how they changed over time, *see id.* ¶¶ 55, 57, 62–63, 101–02, 144, 165,

20   172. Indeed, Allec's claims take issue with the TOS changing between 2018 and November 2021,

21   implying his awareness of them. *Id.* ¶¶ 57, 62–63, 144, 165, 172, 199–200. The FAC establishes Allec

22   had actual knowledge of the Terms; no further analysis is required. *See Patrick*, 93 F.4th at 476.

23

24

25

26   ───────────

[1] Allec is mistaken that Upside "does not . . . assert that Plaintiff consented to [its] website Terms." Dkt. No. 44 at 6:8–9. Upside explicitly stated that "[i]n his FAC, as in his original complaint, Allec does not
27   dispute he agreed to Upside's TOS when he registered." Dkt. No. 47 at 8:12–13; *accord* Dkt. No. 26 at 2:20–21. Allec has now pivoted and argues *for the first time* that "there is no allegation or evidence that
28   [he] consented to [the TOS]." Dkt. No. 52 at 4:17–18.

2

**b.    Upside's registration page conspicuously displays a link to the TOS and requires users to click a button manifesting their agreement.**

Even if Allec did not have actual knowledge of the TOS (he did), Upside's 2018 consent mechanism readily meets the Ninth Circuit's standards for obtaining users' assent to online terms of service. *See Patrick*, 93 F.4th at 477; *Berman*, 30 F.4th at 855–56.[2]

When Allec registered in 2018, Upside required users to accept its TOS by pressing a "Continue" button with this express representation beneath it: "**By pressing 'Continue', you agree to our Privacy Policy and Terms of Service.**" Rubio Decl. Ex. 1. The TOS were highlighted in blue and hyperlinked to the TOS then in effect. Rubio Decl. ¶ 3 & Ex. 1.[3] Here is what users saw (Rubio Decl. Ex. 1):



---

[2] This Court may consider new evidence in a reply brief where, as here, it responds to an opponent's new argument. *See Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 850 (N.D. Cal. 2021); *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018); *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188–89 (9th Cir. 2024); Rebuttal Request for Incorporation by Reference (Rebuttal RIR) and Declaration of Jan Rubio (Rubio Decl.), filed concurrently herewith.

[3] Allec's screenshot (FAC ¶ 81) did not exist in 2018; it is *step three* in the *current* account set-up process. *See* Rubio Decl. ¶ 9 & Ex. 7. As in 2018, the current registration flow advises that, by creating an account, users accept Upside's TOS, which users can access by clicking the underlined link. *Id.*

3

1      While Allec alleges that users signing up for the application in the present do not encounter

2  "qualifications or disclaimers (or even Upside's Terms)" when registering for Upside, FAC ¶ 81, the

3  FAC cherry-picks a single image from the three-step registration process on Upside's app, misleadingly

4  omitting images from the other steps of Upside's registration process, Rubio Decl. Exs. 1, 7. The full

5  picture establishes conclusively that users like Allec must accept the TOS when they register with

6  Upside. *See id.* The FAC's cherry-picked information justifies deeming the entire context incorporated

7  by reference.[4]

8      These screenshots—which are deemed incorporated by reference in the complaint, *see Khoja*,

9  899 F.3d at 1002; *Knievel*, 393 F.3d at 1076; *Parrino*, 146 F.3d at 706; Rebuttal RIR—eviscerate

10 Plaintiff's assertion that the lone screenshot he selectively offered in his complaint "show[s] that no

11 consent mechanism or any reference to the Terms were on Defendant's signup screen." Dkt. No. 52 at 8.

12     Upside's registration process easily meets the Ninth Circuit standards for obtaining users' assent

13 to the TOS. *See Patrick*, 93 F.4th at 477; *Berman*, 30 F.4th at 855–56. In *Patrick*, the plaintiffs

14 purchased merchandise from the defendants' websites. 93 F.4th at 474. The website provided an option

15 for users to proceed straight to checkout or to create an account. *Id.* Either way, the user had to confirm

16 the order by clicking a final button to place the order. *Id.* Adjacent to this button, the website included a

17 notice that, by submitting the order, the user agreed to the company's privacy policy and terms of use.

18 *Id.* The phrase "terms of use" was a hyperlink that leads to the company's terms of service. *Id.* One of

19 the class representatives, Arcilla, denied seeing a hyperlink to the terms at checkout. *Id.* at 476.

20 Nevertheless, the Ninth Circuit held the defendant's website provided sufficient information to put him

---

[4] Rebuttal RIR; *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding it was proper to consider surrounding pages when considering whether photo and caption in the complaint were defamatory); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (the incorporation by reference doctrine was designed to prevent "plaintiffs from selecting only portions of documents that support their claims while omitting portions of those very documents that weaken—or doom—their claims"); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[The] policy concern underlying [incorporation by reference is] [p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."), *superseded on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 115 (9th Cir. 2014) ("Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (cleaned up)).

on inquiry notice of the Terms. *Id.* at 477. The checkout page included an explicit notice directly below the button the plaintiff tapped to complete his purchase. *Id.* The notice was on an uncluttered page, not hidden or obscured, and was clear and legible, in a different font color from the surrounding white background and adjacent black text. *Id.* The "terms of use" hyperlink was the same color as other clickable links on the page, suggesting clearly that it was a hyperlink. *Id.*

     *Patrick* (which Allec fails to cite) is on all fours with this case and governs here.[5] On the "Sign Up" page, in 2018, when Allec registered with Upside, users were required to confirm their decision to register with Upside by clicking a final "Continue" button. Rubio Decl. Ex. 1. Directly underneath this button, the app included a notice that, "[b]y pressing 'Continue', you agree to our <u>Privacy Policy</u> and <u>Terms of Service</u>." *Id.* The phrase "Terms of Service" was a hyperlink that leads to Upside's Terms of Service. Rubio Decl. ¶ 9 Ex. 7. As in *Patrick*, the notice appeared on an uncluttered page, not hidden or obscured, and was clear and legible, and in a different font color—bright blue—from the surrounding light background and adjacent black text. Rubio Decl. Ex. 1. The "Terms of Service" and "Privacy Policy" hyperlinks were the same color as other clickable links in the registration process, indicating per Internet custom that they are hyperlinks. *Id.* Here, just as in *Patrick*, the Upside app's "Sign Up" page provided users like Allec reasonably conspicuous notice of the Terms. 93 F.4th at 477. And the mechanism of consent—clicking on the "Continue" button—was unambiguous because the user was "explicitly advised that the act of clicking will constitute assent to the terms and conditions of [the] agreement." *Id.* These facts make *Berman* distinguishable, just as the Ninth Circuit held *Berman* was distinguishable in *Patrick. See Patrick*, 93 F.4th at 477; *cf. Berman*, 30 F.4th at 856-57 (holding terms inconspicuous where text was printed "a tiny gray font . . . so small that it is barely legible to the naked eye"). Allec had actual and constructive notice of the Terms when he registered with Upside in 2018.

          **c.**    **Allec also assented to the updated TOS, which he acknowledges he received by email and reviewed before continuing to use Upside.**

     To guild the lily, the FAC and judicially noticeable facts establish that Allec also assented to subsequent updates of the TOS.

---

[5] That *Patrick* arose in the context of a motion to compel arbitration does not distinguish it from this case. As discussed, the screenshots from the full, three-step registration process are subject to judicial notice under the incorporation by reference doctrine and thus can and should be considered here.

Email updates are enough to enforce revised TOS where the plaintiff previously assented to the TOS.[6] For example, in *West*, the court ruled the plaintiff assented to Uber's updated TOS where he received an email informing him of the updates, providing a link to the updated Terms, and explaining continued use of the Uber app confirmed agreement to the new Terms. *West*, 2018 WL 5848903 at *5. Similarly, the court in *Webber* found that a November 2016 email properly notified plaintiff that Uber's Terms were updated and continued use would constitute assent. *Webber*, 2018 WL 10151934 at *4.

Here, the FAC acknowledges that Allec reviewed both (1) Upside's email regarding the November 2021 update to the TOS and (2) the November 2021 TOS. *See* FAC ¶¶ 57, 61, 97–102. Further, the FAC acknowledges Allec received emails from Upside on various occasions, including with updates to the TOS. *See id.* ¶¶ 61, 73, 95, 97. Upside emailed users about TOS updates in December 2019, July 2020, September 2021, November 2021, and December 2022. Rubio Decl. ¶¶ 4, 5, 6, 7, 8 & Exs. 2, 3, 4, 5, 6. Those emails notified users that changes were being made to the TOS, hyperlinked to the Terms, and summarized the changes. *See* Rubio Decl., Exs. 2–6. Here, as in *Miller*, *Matera*, *West*, and *Webber*, Upside's TOS provide users' "continued use of the Service after the date any . . . changes [to the TOS] become effective constitutes [their] acceptance of the new [TOS]." *E.g.*, Dkt. No. 47-2 (2017 TOS) at 5.

For each of these reasons, Allec's new argument that he did not assent to the TOS fails.

### 2. The TOS are enforceable.

Having consented to the TOS, Plaintiff attempts to maneuver his way out of them by incorrectly asserting that they are unenforceable, rehashing the same arguments he made in his first opposition to Upside's motion to dismiss. Allec's arguments fare no better on his second attempt.

---

[6] *See, e.g.*, *Miller*, 2023 WL 5665771, at *2 n.1 (Ninth Circuit explained that most plaintiffs "accepted the 2019 Terms of Service by using the app or performing services after receiving an email in October 2019 notifying them that Amazon was updating the agreement"); *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 13, 2016) (Gmail users assented to the TOS because they were required to agree to them to use Gmail, Google posted amendments to its website, and if users do not agree to the modified terms, they should discontinue use); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("[W]hen consumers receive emails [notifying them of TOS updates], continued use . . . constitutes assent to the updated terms."); *accord Webber v. Uber Techs., Inc.*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018).

1

### a.    Allec's misrepresentation and frustration arguments are frivolous.

2

*Misrepresentation.* Upside's alleged "cashback for life" advertisement is entirely consistent

3

with the TOS. Users remain eligible to earn referral bonuses indefinitely as long as they comply with

4

the TOS.[7] Case law makes clear that Upside is well within its rights to ban users for violating its TOS,[8]

5

and Allec acknowledges his account was terminated because he violated the TOS. FAC ¶¶ 106–107.

6

Thus, his "misrepresentation" and "net impression" arguments miss the mark. *See* Dkt. No. 52 at 6–7 &

7

n.2. Further, the "net impression" of reading Upside's advertisement and TOS together is users receive

8

the benefit of Upside's ongoing referral bonus rewards as long as the user does not actively violate the

9

TOS, resulting in account termination. *Supra* n.8.[9] In any event, a statement is not a

10

"misrepresentation" if the plaintiff who claims to have been deceived selectively ignores express

11

contract terms. Dkt. No. 47 at 23. Further, as discussed, Allec agreed to the TOS. *Supra* § II.A.1. Allec

12

does not argue he did so unknowingly, distinguishing him from *Berman*, 30 F.4th 849, and *Brooks v. IT*

13

*Works Mktg., Inc.*, 2022 WL 2079747, at *6–8 (E.D. Cal. June 9, 2022).

14

*The frustration of purpose doctrine* is also inapposite. Its elements are: (1) the basic purpose of

15

the contract, which has been destroyed by the supervening event, was recognized by both parties to the

16

---

17

[7] The FAC, like the original complaint, does not allege that Upside ceased paying lifetime referral

18

bonuses to users who *comply* with the TOS. *See* FAC ¶¶ 70–72; Dkt. No. 1 ¶¶ 67–69.

[8] *See, e.g.*, *Huber v. Biden*, 2022 WL 827248, at *5 (N.D. Cal. Mar. 18, 2022) (user's violation of TOS

19

was "good and sufficient basis to suspend" the user's account), *aff'd*, 2022 WL 17818543 (9th Cir. Dec.

20

20, 2022); *Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, at *5 (N.D. Cal. Sept. 4, 2023) (online
platforms "can revoke access at [their] discretion"); *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876,

21

885 (N.D. Cal. 2015); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159–60 (N.D. Cal. 2020),
*aff'd*, 857 F. App'x 907 (9th Cir. 2021); *Putian Authentic Enter. Mgmt. Co., Ltd. v. Meta Platforms,*

22

*Inc.*, 2022 WL 1171034, at *4 (N.D. Cal. Apr. 19, 2022) ("Because Plaintiffs . . . appear to have violated
Meta's terms … Meta was within its rights . . . to terminate Plaintiffs' accounts."); *Mercola.com*, 2023

23

WL 5680112, at *5 (once a user's account is terminated, per Google's TOS, the user has no right to

24

access content from the terminated account) (collecting cases); *Enhanced Athlete Inc. v. Google LLC*,
2020 WL 4732209, at *833 (N.D. Cal. Aug. 14, 2020) (reaffirming website's right to terminate users'

25

accounts when they violate TOS; any consequential lost revenue "is simply inapposite").

26

[9] The authorities Allec cites in support of his "net impression" argument are inapposite. His principal
cited case was an FTC scam lawsuit; the defendants made false and deceptive claims that consumers

27

could quickly make large amounts of money in their spare time, working only a few hours a week, by
following the defendants' "program." *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). There are

28

no comparable allegations here.

contract, (2) the event was of a nature not reasonably to have been foreseen, and the frustration must be so severe that it is not fairly to be regarded as within the risks that were assumed under the contract; and (3) the value of counterperformance to the promisor seeking to be excused was substantially or totally destroyed. *Peoplesoft U.S.A., Inc. v. Softeck, Inc*., 227 F. Supp. 2d 1116, 1119–20 (N.D. Cal. 2002) (collecting cases); *SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*, 87 Cal. App. 5th 882, 895–96 (2023). Further, "when a risk has been contemplated and voluntarily assumed[,] . . . foreseeability is not an issue and the parties will be held to the bargain they made." *Peoplesoft*, 227 F. Supp. 2d at 1120 (cleaned up). None are met here. First, Upside's purpose in entering into the TOS—to govern the parties' conduct and liabilities in their relationship—is *not* frustrated. *See id.* at 1119. Second, the TOS Allec assented to when he opened his account stated Upside could (a) change its offerings at any time and (b) terminate its relationship with users who violated the TOS. Dkt. No. 47-2, Ex. 1 at 1, 3 (May 2017 TOS). Thus, Allec's purported frustration of purpose was entirely foreseeable. *See Peoplesoft*, 227 F. Supp. 2d at 1120; *Glenn R. Sewell Sheet Metal*, *Inc. v. Loverde*, 70 Cal. 2d 666, 676 n.13 (1969). Third, Allec advances no argument demonstrating the value of Upside's counterperformance was substantially or totally destroyed: Upside offered him the opportunity to continue earning cashback bonus referrals through its affiliate program, but Allec declined. FAC ¶ 61. *See Peoplesoft*, 227 F. Supp. 2d at 1119; *Dorn v. Goetz*, 85 Cal. App. 2d 407, 412–13 (1948). This Court should reject Allec's misrepresentation and frustration arguments.

> **b.    The Terms are not illusory or in bad faith merely because they contain a common unilateral modification clause.**

"Terms allowing service providers to discontinue service, or remove content unilaterally . . . are routinely found in standardized agreements and enforced by courts." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021) (cleaned up); *see Aggarwal v. Coinbase, Inc.*, 2023 WL 4935003, at *5 (N.D. Cal. Aug. 2, 2023) (holding unilateral amendment provision did not render terms of service illusory or in bad faith); *Chess v. CF Arcis IX LLC*, 2020 WL 4207322, *1, *9–10 (N.D. Cal. July 22, 2020) (same, even though changes made it harder to get member's substantial deposit reimbursed when they left).

This case is distinguishable from *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012). There, the court held a contractual term was illusory because allowed the employer to "amend

8

DEFENDANT UPSIDE SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05982-SK

the contract in anticipation of a specific claim, altering the arbitration process to the employee's detriment" by merely providing notice to that employee. *Id.* at 1433. As this Court has explained, *Peleg* "was concerned with potentially illusory contract terms by which an employer could change the terms of the arbitration provision at any time, even after a dispute had arisen." *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 880 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020). In addition, *Peleg* applied Texas law, which has requirements regarding arbitration not found in California law. *See Chess*, 2020 WL 4207322, at *10. In any event, no such concerns are present here: Allec does not allege Upside amended its TOS after this dispute arose, nor that the amended TOS specifically targeted Allec. *Peleg* is inapplicable. This Court should reject Allec's bid to excuse himself from the TOS based on the doctrines of illusoriness and bad faith.

### c.    Allec's cut-and-paste unconscionability arguments should be rejected.

A contract is only unenforceable as unconscionable if both procedural and substantive unconscionability are present—one party must lack a meaningful choice and the contract terms must unreasonably favor the other party. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016). These factors are assessed on a "sliding scale," so that when a contract has a minimal degree of procedural unconscionability, the invoking party must demonstrate the terms are extremely harsh and unreasonable. *Id.* at 1244. The facts and law establish Upside's TOS are not unconscionable.

***Procedural Unconscionability.*** Because Allec never directly explains why the Terms are procedurally unconscionable, *see* Dkt. No. 52 at 12–13, he has waived the argument and failed to carry his burden to demonstrate both procedural and substantive unconscionability. *See Baltazar*, 62 Cal. 4th at 1243–44. Even if this Court considers the argument, courts routinely hold similar TOS are minimally procedurally unconscionable. *See, e.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023); *Murphy*, 60 Cal. App. 5th at 38 (Twitter); *see also Patrick*, 93 F.4th at 479 (holding user was on fair notice of TOS displayed on company's website and viewable by hyperlink). As the Court explained in *Murphy*, while online TOS may technically be "adhesion contracts, [they] are indispensable facts of modern life that are generally enforced." 60 Cal. App. 5th at 38 (cleaned up). That users "had no opportunity to negotiate the terms of service, standing alone, is insufficient to plead a viable unconscionability claim." *Id.* (collecting cases). Here, too, the TOS are written in plain language in a

9

legible font. *See* Dkt. Nos. 47-2, Exs. 1-8 (TOS). And here, as in *Murphy*, Allec "does not allege any facts demonstrating surprise, such as the terms of the bargain being hidden in a prolix printed form or pressure to hurry and sign." 60 Cal. App. 5th at 38 (cleaned up). Indeed, Allec acknowledges that Upside emailed him to alert him to the new TOS *before* the Terms even took effect. FAC ¶¶ 60–61. As in *Murphy*, Allec pleaded, at most, minimal procedural unconscionability. Allec must therefore make a heightened showing of unconscionability to succeed. He cannot. *See Baltazar*, 62 Cal. 4th at 1243.

***Substantive Unconscionability.*** None of the TOS provisions to which Allec objects are substantively unconscionable—courts have approved comparable (1) liability waivers and limitations on damages, (2) one-year limitations periods, and (3) provisions allowing a company to change the TOS at the company's sole discretion. *E.g.*, Dkt. No. 47-2 at Ex. 1 (2017 TOS); *see* Dkt. No. 52 at 13–19. Allec's arguments have already been rejected and its authorities distinguished in *Murphy*, 60 Cal. App. 5th at 35–38. In fact, several of Allec's arguments were copied and pasted nearly verbatim from the *Murphy* appellant's losing brief. *See* Appellant's Reply Brief, 2020 WL 4561758, at *44–46.

**(1) Liability limitation.** "In general, limitation of liability clauses are permissible." *New England Country Foods, LLC v. Vanlaw Food Prod., Inc.*, 87 F.4th 1016, 1019 (9th Cir. 2023). California law generally allows contractual limitations on liability, except in unusual cases not applicable here (e.g., intentional wrongs, gross negligence, or negligence in certain public-interest matters). *Id.*; 1 Witkin, Summary 11th Contracts § 690 (2022) (collecting authorities); *see, e.g.*, *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, 2015 WL 4452373, at *6 (N.D. Cal. July 20, 2015) (claims against negligent workers compensation insurance broker). Courts routinely hold TOS with such provisions are conscionable. *See Murphy*, 60 Cal. App. 5th at 35–38 ("Courts have . . . recognized service providers that offer free services to Internet users may have a legitimate commercial need to limit their liability and have rejected claims that such limitations are so one-sided as to be substantively unconscionable." (collecting cases)); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125–126 (2015); *Darnaa, LLC v. Google, LLC*, 756 F. App'x 674, 676 (9th Cir. 2018).

Allec's cited case, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1137–1138 (N.D. Cal. 2018), is distinguishable here, just as it was distinguishable in *Murphy*, 60 Cal. App. 5th at 37. In *Yahoo!*, the plaintiffs sufficiently pleaded terms were unconscionable where they

10

DEFENDANT UPSIDE SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05982-SK

subverted the defendants' legal obligations to maintain data security—which the users were unequipped to handle themselves—and the plaintiffs suffered actual damages from Yahoo's data breach. 313 F. Supp. 3d at 1137–38. The *Murphy* court distinguished *Yahoo!*, observing the plaintiff "made no similar allegations of legal obligations on the part of Twitter, or of damages suffered by Murphy and other users, with respect to Twitter's waiver of liability for removing content and suspending accounts." 60 Cal. App. 5th at 37. Here, as in *Murphy*, Upside is not legally obligated to offer Allec the opportunity to earn personal referral bonuses, and Allec alleges no real-world harm, other than from his loss of use of Upside's program—unlike the *Yahoo!* users, who were harmed because their PII was disclosed. [10]

    **(2) One-year limitations period.** The Ninth Circuit has held one-year limitations periods are not unconscionable. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032–33 (9th Cir. 2016). Allec again invokes the CLRA's anti-waiver provision, but *Tompkins* also involved a CLRA claim. 840 F.3d at 1021, 1032–33; *see Tompkins v. 23andMe, Inc.*, 2013 WL 6497912, ¶¶ 81–90, at *19–20 (N.D. Cal. Dec. 9, 2013). Here, as in *Tompkins*, the one-year limitations clause does not render the Terms unconscionable. Though Upside cited *Tompkins* in its prior briefing, Allec still does not distinguish or even cite it in his opposition to the motion to dismiss the FAC. [11] Nor does Allec respond to Upside's argument that reasonable contractual limitations periods are routinely enforced. *See* Dkt. No. 47 at 12 (citing *Lawrence v. W. Mut. Ins. Co.*, 204 Cal. App. 3d 565, 571 (1988), *Soltani v. W. & S. Life Ins.*, 258 F.3d 1038, 1043–44 (9th Cir. 2001), *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995), *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1262 (2013), and *Rumsey Elec. Co. v. Univ. of Del.*, 358 A.2d 712, 714 (Del. 1976)). [12]

---

[10] The CLRA's anti-waiver provision, Cal. Civ. Code § 1751, does not render the TOS's limitation on liability provisions unconscionable. Allec is not a "consumer" under the CLRA, and the CLRA does not apply for a host of other reasons. Dkt. No. 47 at 19–21. This inapplicable and hypothetical objection is not grounds for refusing to enforce the TOS as a whole.

[11] Allec cites *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) for a general proposition of law; it is distinguishable. *See id.* at 999 (*nonmutual* provision may contribute to unconscionability of arbitration clause); *cf., e.g.*, Dkt. No. 47-2 (2017 TOS) at 11 (*mutual* one-year limitations period).

[12] Allec argues the one-year limitations clause is "expressly unlawful" (Dkt. No. 52 at 15:12) because it requires users to bring a claim within one year "regardless of any statute or law to the contrary." This argument is frivolous. The purpose of a contractual limitations period is "to shorten an otherwise

(3) Discretion to modify terms unilaterally. Allec acknowledges, as he must, that "website operators do have some discretion when it comes to terminating accounts" within the bounds of good faith. Dkt. No. 52 at 17; *see supra* n.8. The discussion should end there. "Terms allowing service providers to discontinue service, or remove content unilaterally, . . . are routinely found in standardized agreements and enforced by courts." *Murphy*, 60 Cal. App. 5th at 36 (cleaned up). The plaintiff must show "egregious" tactics or that the terms are "extreme" compared to "the mores and business practices of the time and place." *Id.* (cleaned up); *see also, e.g.*, *Chou v. Charles Schwab & Co.*, 2023 WL 2674367, at *1 (9th Cir. Mar. 29, 2023) (following *Murphy*); *Baltazar*, 62 Cal. 4th at 1250 ("A contract can provide for a margin of safety that provides the [company] a type of extra protection for which it has a legitimate commercial need without being unconscionable.") (cleaned up).

Allec's cited case, *Bragg v. Linden Research Inc.*, 487 F. Supp. 2d 593, 595–96 (E.D. Pa. 2007), is distinguishable here, just as it was distinguishable in *Murphy*, 60 Cal. App. 5th at 37. In *Bragg*, users played a video game, "Second Life," where they could acquire virtual goods with real funds. 487 F. Supp. 2d at 595. In the event of a dispute, the TOS imposed one-sided remedies. *Id.* at 608. The company seized the plaintiff's account, retained funds he had paid them, then told him he could resolve the dispute by initiating a costly arbitration process, which the court held was unconscionable. *Id.* Here, as in *Murphy*, the arbitration clause (which Upside does not even invoke here) and remedies are not one-sided, and Upside did not retain funds Allec paid to Upside— Upside "is completely free for [him] to use[.]'" FAC ¶ 55; *see Murphy*, 60 Cal. App. 5th at 36 (that Twitter was offered free of charge undercut plaintiff's unconscionability argument).

The Terms are reasonable and enforceable, and they apply here.

**B.  Allec's unilateral contract theory fails because it necessarily incorporates the TOS.**

In arguing the TOS do not apply to his unilateral contract theory, Dkt. No. 52 at 6, Allec ignores two actions implicit in accepting the purported offer—both the referring individual and the referred individual must register for an Upside account. As discussed, registration requires agreeing to the TOS, rendering the TOS inextricable from Allec's alleged unilateral contract.

---

applicable statute of limitations," *Brisbane*, 216 Cal. App. 4th at 1262, and it is enforceable as long as the shortened time is reasonable. *See, e.g.*, *id.*; *Tompkins*, 840 F.3d at 1032–33.

Moreover, the TOS expressly govern the payment of the referral bonuses and have since Allec registered with Upside in 2018. That program required users to create Upside accounts, accept the TOS, and store their accrued rewards on Upside's platform until Upside distributed those awards to users. Bonuses, just like all other rewards from purchases, are "Cash Back rewards." *E.g.*, Dkt. No. 47-2, Ex. 1 (2017 TOS) at 2–4. Cash Back rewards sit in a user's Upside account until a distribution request is made, at which point Upside transfers the funds to the user directly or via a third-party payment method, such as PayPal. *E.g.*, Dkt. No. 47-2, Ex. 1 (2017 TOS) at 2. Allec's payments came from his Upside account, which held Cash Back rewards and was comprehensively governed by the TOS.

The TOS thus apply to the FAC's unilateral contract theory. Dkt. No. 47 at 8–11; *see Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 950–51, 965–66 (N.D. Cal. 2015) (holding TOS applied to app-based driver's claim for failure to pay referral bonuses based on rewards-program advertisement); *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1039 (2022), *review denied* (Mar. 15, 2023) (company's public "promises" were not contractual where the written contract contained an integration clause); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 787 (9th Cir. 2012) (explaining advertisement created unilateral contract that incorporated terms set forth elsewhere in a catalog users could obtain by mail). Allec does not meaningfully respond to these authorities or this argument, other than to argue he did not assent to the TOS and that the TOS are not enforceable (rebutted above). The TOS apply to Allec's unilateral contract theory.

### C. The one-year limitations clause bars Allec's complaint.

Upside's motion established that the one-year limitations period applies here and bars each of Allec's claims. The TOS, including its one-year limitations period, govern the parties' entire relationship, including the Referral Program and thus applies to each cause of action in the TOS. Dkt. No. 47 at 12–14. One-year limitations clauses, unlike, e.g., releases, need not be prominently displayed to be enforceable. *Id.* at 13–14, citing, inter alia, *Tompkins*, 840 F.3d at 1032 & n.8 (enforcing one-year limitations clause despite lack of distinctive formatting). Allec does not meaningfully respond to these arguments. Instead, Allec (1) argues the one-year limitations clause does not apply to "advertising" claims, and (2) invokes the continuous accrual doctrine. Neither argument has merit.

1

**1. The one-year limitations clause encompasses Allec's advertising claims.**

Allec's claims are untimely under the one-year limitations clause, which uses general, all-encompassing language. *See, e.g.*, Dkt. No. 47-2, Ex. 1 (2017 TOS) at 11 ("You agree that regardless of any statute or law to the contrary, *any claim or cause of action arising out of or related to use of the Service or these Terms of Service* must be filed within one (1) year after such claim or cause of action arose or be forever barred." (emphasis added)).

This Court should not infer that the Terms' mention of "advertising" in one place (the arbitration clause) implies their intent to exclude it elsewhere (the one-year limitations clause) *Cf.* Dkt. No. 52 at 19–20. The arbitration clause provides a nonexhaustive list of examples of what disputes or claims are subject to arbitration, including advertising claims—it does not exclude such claims from the one-year limitations clause. Dkt. No. 47-2, Ex. 1 (2017 TOS) at 8; *see In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (*expressio unius* canon inapplicable to "inexhaustive list of examples, rather than a bounded set of applicable items"). Further, the one-year limitations clause is separate from the arbitration clause, making this interpretive canon particularly inapposite. *See id.*

Further, advertising claims plainly "aris[e] out of or relate[ ] to" Allec's use of the Upside app. *See Loewen*, 129 F. Supp. 3d at 966 (TOS applied to advertising claims because "the dispute directly 'touches' the subject matter of the . . . TOS, which governs all aspects of driving for Lyft, as well as the Lyft Platform, which Lyft drivers are required to use."); *Suski v. Marden-Kane, Inc.*, 2022 WL 103541, at *6 (N.D. Cal. Jan. 11, 2022) (when parties enter into two contracts dealing with the same subject-matter, they "must be interpreted together" (cleaned up)), *aff'd sub nom. Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022), *aff'd*, 144 S. Ct. 1186; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (similar "arising out of" language is "broad and far reaching").

The plain language of the one-year limitations clause makes it applicable to all of Allec's claims. This Court should enforce it and dismiss the Complaint with prejudice.

**2. The continuous accrual doctrine is inapplicable.**

In a footnote, Allec invokes the "continuous accrual doctrine." Dkt. No. 52 at 16 n.7. The continuous accrual doctrine does not apply here. It allows for "recurring invasions of the same right [to] each trigger their own statute of limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (Cal.

14

2013). In general, the "last element" accrual rule, where "the statute of limitations runs from the occurrence of the last element essential to the cause of action." *Id.* at 875 (cleaned up). "[I]f the alleged recurring injuries during the limitations period 'arose out of a single transaction' that occurred before the limitations period, the continuous accrual rule does not apply." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1083 (N.D. Cal. 2016) (quoting *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 418 (2007)). Here, the last element essential to his causes of action—Upside's decision to cease paying him referral bonuses—was a "single transaction," *id.*, that occurred, at the latest, when his account was terminated in May 2022. Allec does not allege Upside made a new and different decision not to pay a particular referral bonus each time one of his previously referred customers pumps a gallon of gas—rather, he stopped receiving referral bonuses when he was banned from Upside in May 2022. FAC ¶¶ 106–107. This case is thus distinguishable from continuous accrual cases, which involve ongoing, *periodic* obligations (like monthly bills or lease payments) rather than the defendant's termination of its relationship with the plaintiff on a date certain. *See Garrison*, 159 F. Supp. 3d at 1083–84. Further, applying the continuous accrual doctrine as Allec suggests would mean he could "timely" sue a decade after his account was terminated because he believes he is entitled to a "lifetime" benefit—an untenable result not supported by precedent. *See id.*

### D.  Allec's claims independently fail because they are inadequately pleaded.

For the reasons stated in Upside's motion to dismiss the FAC (Dkt. No. 47), Upside's alleged advertisement did not create a unilateral contract (at 17); the TOS bar Allec's unilateral contract claim (at 14); and Allec's remaining claims under the CLRA, FAL, UCL, and for unjust enrichment, bad faith, conversion, and fraud all fail to state a claim (at 19–24). Upside already anticipated and rebutted Allec's arguments in response. The motion to dismiss should be granted for these independent reasons.

## III.    CONCLUSION

The FAC should be dismissed with prejudice and leave to amend should be denied.

Respectfully submitted,

Dated: July 29, 2024

*/s Josephine K. Petrick*

Josephine K. Petrick
THE NORTON LAW FIRM PC
Attorneys for Defendant
Upside Services, Inc.